UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at PIKEVILLE**

| | | |
|---|---|---|
| LYNNE ANNE ROBERTSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. |
| | ) | 7:20-CV-33-JMH |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| KILOLO KIJAKAZI, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\* \*\* \*\* \*\* \*\*

Plaintiff applied for DIB and SSI in 2016 (Certified Administrative Transcript (Tr.) 332, 334). An ALJ's decision denying Plaintiff's applications became the Commissioner's final decision when the agency's Appeals Council denied Plaintiff's request for review (Tr. 1-5). *See* 20 C.F.R. § 404.981. The Court has jurisdiction under 42 U.S.C. § 405(g). This matter is fully briefed (*see* DE 15 & 17) and ripe for review.

Plaintiff was 47 years-old in January 2016, when she claimed that she became disabled due to multiple physical and mental conditions (*see* Tr. 21, 332, 357). The medical evidence and the hearing testimony are set forth in the ALJ's decision (*Id.* at 10-23), and a more specific analysis of the relevant facts is set forth below.

The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims (Tr. 12-22). *See* 20 C.F.R. § 404.1520(a)(4) (outlining the process). As relevant here, the ALJ assessed Plaintiff's residual functional capacity (RFC) between steps three and four, finding that she could perform a restricted range of light work involving only simple work-related decisions in a routine work setting having minimal variations and limited social interaction (Tr. 15-16). *See id.* §§ 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."), § 404.1567(b) (defining light work). At step five, the ALJ found that this RFC would allow Plaintiff to perform other work existing in significant numbers in the national economy (Tr. 21-22). This finding was based on the testimony of a vocational expert.(Tr. 134-35). The ALJ thus concluded that Plaintiff was not disabled under the Act (*Id.* at 22).

## JUDICAL REVIEW

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1154, 1157. The substantial evidence standard is even less demanding than the "clearly erroneous" standard that governs appellate review of

district court factfinding—itself a deferential standard. *Dickinson v. Zurko*, 527 U.S. 150, 152-53 (1999).

## DECISION

The ALJ found that Plaintiff had the mental RFC to make simple work-related decisions in a routine work setting having minimal variations; to have occasional interactions with supervisors and co-workers; and to have no more than superficial work-related contact with the general public (Tr. 16). The ALJ's mental RFC assessment was supported by the opinions of reviewing state agency psychological consultants Dr. Gary Perry and Dr. Christi Bruening. Dr. Perry opined that Plaintiff was

> able to understand and remember at least simple instructions and procedures requiring learning periods of 60 days or less. She could sustain attention, concentration, effort and pace for simple tasks requiring independent judgments and involving minimal variations over a 2 hour work segment with normal breaks. She appears capable of interacting with co-workers and supervisors for task completion in a work environment that offers only occasional contact with the public for task completion. The claimant has difficulty tolerating stress, but appears capable of adapting to situational conditions and normal changes in routines and hazards in the work place.

(Tr. 173). Dr. Bruening opined that Plaintiff could understand and remember simple and detailed instructions; carry out simple and familiar detailed instructions with concrete variables with little requirements for independent judgment or decision-making, for two-hour segments over an eight-hour workday, five days per week; tolerate occasional superficial contact with supervisors, co-

workers, and the general public; and adapt to the expected and familiar changes and pressures of a routine work setting not requiring strict production quotas (Tr. 217).

The ALJ gave some weight to the opinions of Drs. Perry and Bruening (Tr. 19-20). Although the ALJ did not include verbatim the psychologists' opinions that Plaintiff could sustain attention, concentration, effort, and pace for two hours at a time, the ALJ limited Plaintiff to simple work-related decisions and found that she could do unskilled work (Tr. 16, 22). Unskilled work by definition involves concentrating in two-hour segments. *See* Social Security Administration (SSA) Program Operations Manual System (POMS) DI 25020.010(B)(3), Mental Limitations, 2001 WL 1933437 (explaining that, to perform unskilled work, a claimant must be able to "maintain attention for extended periods of 2-hour segments," and "concentration is not critical"). As such, courts in this Circuit, including one in this District, have found harmless the omission of a two-hour concentration limit from a claimant's RFC or hypothetical to the vocational expert. *See, e.g.*, *Gee v. Commissioner of Soc. Sec.*, No. 2:19-CV-5009, 2020 WL 3989172, at *5 (S.D. Ohio July 15, 2020) ("[A]ny alleged failure to include a two-hour concentration limitation does not constitute reversible error."), report and recommendation adopted *sub nom.* *Gee v. Comm'r of Soc. Sec.*, 2020 WL 4569132 (S.D. Ohio Aug. 7,

2020) (unpublished); *Mallott v. Colvin*, No. 5:13-305-DCR, 2014 WL 2574520, at *8 (E.D. Ky. June 9, 2014) (unpublished).

In assessing Plaintiff's mental RFC, the ALJ reasonably discounted consultative psychologist Dr. Sprague's opinion (*see* Tr. 20, 823-24). Dr. Sprague opined that Plaintiff was moderately to markedly impaired in a number of workplace functional abilities (Tr. 823-24). The ALJ gave limited weight to Dr. Sprague's opinions for three reasons: (1) the doctor had examined Plaintiff on only one occasion, (2) the opinion was inconsistent with the totality of the medical evidence, and (3) the opinion was inconsistent with Plaintiff's limited mental health treatment during the relevant period (Tr. 20).

Factors relevant to the weight due a medical opinion include whether the source has seen a claimant "a number of times and long enough to have obtained a longitudinal picture" of the claimant's impairment and whether the source has provided treatment for the impairment in question. 20 C.F.R. § 404.1527(c)(2)(i), (ii). The ALJ correctly found that Dr. Sprague had examined Plaintiff only once before rendering his opinion (Tr. 20; *see* Tr. 819-24).

Plaintiff contends that the ALJ should not have relied on these factors in discounting Dr. Sprague's opinion because the reviewing state agency psychological consultants had never examined her (Tr. 15 at 4). Although it is true that they did not examine her, the state agency psychologists nevertheless had a

more longitudinal picture of Plaintiff's mental abilities because they reviewed the entire record — including Dr. Sprague's opinion, which followed his one-time examination in January 2017 (*see* Tr. 171-73 (Dr. Perry's February 2017 opinion), 215-17 (Dr. Bruening's March 2017 opinion)). The Sixth Circuit rejected an argument similar to the one made by Plaintiff's in *Norris v. Comm'r of Soc. Sec.,* 461 F. App'x 433, 439 (6th Cir. 2012) (unpublished), finding the ALJ to have reasonably discounted two consultative examiners' opinions – due to the fact that they had only examined the claimant on one occasion — and instead credited the reviewing physicians' opinions given their consistency with the overall record.

Indeed, a factor relevant to the weight due to a medical opinion is the consistency of that opinion with the record as a whole. 20 C.F.R. § 404.1527(c)(4). Here, the ALJ found that Dr. Sprague's opinion was "not consistent with the totality of the medical evidence" (Tr. 20). While the ALJ did not concurrently discuss the evidence that he found inconsistent with the opinion, the Court reads the ALJ's decision as a cohesive whole, not piecemeal. *See Bradford v. Sec'y of the Dep't Health & Human Servs.,* 803 F.2d 871, 873 (6th Cir. 1986) ("It is clear from a reading of the entire opinion that the ALJ . . . ."). The Sixth Circuit has found no error under similar circumstances. *See Crum v. Comm'r of Soc. Sec.,* 660 F. App'x 449, 457 (6th Cir. 2016) (unpublished) ("No doubt, the ALJ did not reproduce the list of

these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.").

A reasonable mind could agree that evidence discussed by the ALJ earlier in his decision was inconsistent with Dr. Sprague's opinion (*see* Tr. 18-19). The ALJ considered Plaintiff's own report that she could follow written and spoken instructions, had no problems getting along with family or friends, prepared simple meals, liked to read and watch television, and could shop in stores (Tr. 15; *see* Tr. 381-83, 385, 822). Indeed, Plaintiff denied any troubles with memory, completing tasks, understanding, following instructions, or getting along with others (Tr. 385). The ALJ also noted Dr. Sprague's own findings of normal orientation, intact recent memory, intact social insight and judgment, and fair rapport (Tr. 15, 18, 19; *see* Tr. 821-22).

Rather than address the evidence cited by the ALJ in his decision, Plaintiff points to other evidence, which she believes supported Dr. Sprague's opinion (DE 15. at 10-11). Under the highly deferential standard of review, however, the Court must affirm the ALJ's decision if it is supported by more than a scintilla of evidence, even where substantial evidence might also support a contrary conclusion. *See Biestek*, 139 S. Ct. at 1154; *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (as long as substantial evidence supports the ALJ's decision, a court will

defer to it "even if there is substantial evidence in the record that would have supported an opposite conclusion").

The ALJ found that Dr. Sprague's opinion was inconsistent with Plaintiff's limited treatment for her mental impairments (Tr. 20). Plaintiff simply obtained psychotropic medications from her family doctor; she had not sought specialized mental health treatment from a therapist or psychiatrist since 2012 (Tr. 117-18). The Sixth Circuit has recognized under similar circumstances that a claimant's conservative treatment for her ailment is a good reason to discount an opinion that the claimant is severely limited. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 631 (6th Cir. 2016).(unpublished); *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (unpublished).

Generally, the opinion of an examining source is to be given more weight than the opinion of a non-examining source, but this is not a bright line rule. *Dragon v. Comm'r of Soc. Sec.,* 470 F. App'x 454, 463 (6th Cir. 2012) (unpublished). "State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence." *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) (unpublished). Here, the ALJ reasonably found that the opinions of State agency psychological consultants Drs. Perry and Bruening were due more weight than Dr. Sprague's opinion because they were aligned with the evidence of record (Tr. 19-20).

Plaintiff argues, mistakenly, that the reviewing psychologists "reviewed only a skeletal portion of the medical evidence" (DE. 15 at page 11). On the contrary, Drs. Perry and Bruening reviewed all of the evidence that Plaintiff submitted prior to their review in February and March 2017, respectively (*see* Tr. 158-60, 173, 201-04, 216-17). Dr. Sprague, on the other hand, reviewed at most one earlier report at his January 2017 examination (*see* Tr. 819 ("Please note that the examiner did not receive any medical information . . . and it is not known if she is currently on any medication regimen . . . We did receive a report from Mountain Comprehensive Care. This lady was diagnosed with depression, although she is noncompliant with any medication.")).

Plaintiff quibbles with Dr. Perry's conclusion that Dr. Sprague's opinion overstated he limitations (DE 15 at page 11-12; *see* Tr. 173 ("Dr. Sprague's [opinion] is assigned no weight and appears as an overestimate of limitations based on information reviewed.")). Plaintiff's layperson opinion cannot overcome the contrary finding of a highly qualified psychologist who is an expert in Social Security disability evaluation. *See* 20 C.F.R. § 404.1513a(b)(1).

Finally, the ALJ's RFC assessment was consistent with the ALJ's finding of moderate limitation in concentration, persistence, and pace. At step three, as part of the "special

technique" for evaluating mental impairments, the ALJ had rated Plaintiff's limitations in the "B criteria" (Tr. 14-15). *See id.* § 404.1520a (explaining the special technique and evaluation of the B criteria at steps two and three). The ALJ found that Plaintiff had a moderate limitation with regard to the B criterion of concentrating, persisting, or maintaining pace (Tr. 15). This rating was not an assessment of Plaintiff's RFC. *See* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *4 ("[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). The ALJ addressed the moderate limitation by confining Plaintiff to simple work-related tasks in a routine work setting having minimal variations (Tr. 16). *Cf. Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). (unpublished) (ALJ accounted for marked and moderate limitations in social interaction by limiting claimant to only occasional interaction with the public).

More than a mere scintilla of evidence supports the ALJ's evaluation of Plaintiff's mental RFC. *See Biestek*, 139 S. Ct. at 1154. The Court should decline Plaintiff's invitation to re-weigh the evidence of her mental limitations, which would exceed the Court's limited standard of review. *See Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010) ("Even if this Court

might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence.").

Turning now to Plaintiff's residual functional capacity (RFC), The ALJ found that Plaintiff had the physical RFC to

> perform light work . . . except she can stand and/or walk for four hours in an eight hour work day. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, and scaffolds. She can frequently balance and stoop, and occasionally kneel, crawl, and crouch. She can never reach overhead with the dominant right upper extremity. She can frequently reach in all other directions with the dominant right upper extremity. She can frequently push and pull with the upper and lower extremities bilaterally. She can make frequent use of hand and foot controls bilaterally. She must avoid frequent exposure to extreme heat, humidity, dust, odors, fumes, gases other pulmonary irritants. She must avoid occasional exposure to unprotected heights and moving mechanical parts

(Tr. 15-16). In reaching this conclusion, the ALJ gave great weight to the opinion of State agency medical consultant Dr. Dawson (Tr. 20; *see* Tr. 212-14).

Dr. Dawson opined that Plaintiff could sit for about six hours in an eight-hour workday (Tr. 212-13). The ALJ found that Plaintiff had the RFC to perform a range of light work (Tr. 15). Light work by definition involves sitting for about around two hours in a workday, far less than Dr. Dawson opined that Plaintiff could do. SSR 83-10, 1983 WL 31251, at *6 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur

intermittently during the remaining time."). As such, to the extent that the ALJ's hypothetical differed from Dr. Dawson's opinion, it was to Plaintiff's benefit. *See Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 584 (6th Cir. 2016)(unpublished) ("The ALJ, it is true, mistakenly called the nurse a 'treating physician.' But that mistake, if anything, gave the reports more weight than they deserve.").

The ALJ reasonably addressed Plaintiff's bilateral hip osteoarthritis and cervical degenerative disc disease in his assessment of her RFC. The ALJ found that these impairments were severe at step two of the sequential evaluation process (Tr. 13). The ALJ then considered Plaintiff's claims of neck and hip pain within his evaluation of her RFC (Tr. 16-17). But the ALJ found that her reported symptoms were inconsistent with other evidence (Tr. 19). Plaintiff does not challenge that finding (*see* generally Pl. Mem.). She has thus waived any argument that her reported symptoms could support greater neck and hip limitations. *See Hollon v. Comm'r of Soc.Sec.,* 447 F.3d 477, 491 (6th Cir. 2006).

Plaintiff's argument that the ALJ should not have relied on Dr. Dawson's opinion incorrectly presumes that an ALJ must have a medical opinion before he can assess a claimant's RFC as to what limitations arise from an impairment (DE 15, pages 14-15). An ALJ assesses RFC based on all of the evidence, not just medical opinions. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c); *Bingaman*

*v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006) (unpublished) ("The ALJ is ultimately responsible for determining a claimant's RFC based on relevant medical and other evidence in the record."). Even though Dr. Dawson did not have the opportunity to review evidence of hip injections or the September 2018 neck x-ray (which Plaintiff erroneously refers to as an MRI, *see* DE15 at 15), the ALJ did.

The ALJ discussed evidence relevant to Plaintiff's neck and hip pain within his assessment of her RFC (Tr. 16-20). In relation to her neck condition, the ALJ discussed the September 2018 neck x-ray (which showed straightening of the spinal curvature with degenerative disc disease at one level (*see* Tr. 1577), as well as findings of normal neck range of motion and no spinal tenderness (Tr. 17, 18; see Tr. 609, 612, 615, 619, 622, 630, 633, 658, 662, 665, 668, 671, 674 (all showing full neck range of motion); Tr. 1736, 1746, 1756, 1765, 1777, 1798, 1807, 1818, 1829, 1840, 1850, 1860, 1871, 1882 (all showing no spinal tenderness)).

Regarding Plaintiff's osteoarthritis, the ALJ discussed the October 2017 hip x-rays, which showed a normal right hip and only "mild arthritic change" in the left hip (Tr. 18; Tr. 1572; Tr. 1539 (normal bilateral hip x-rays in Dec. 2016)). The ALJ reasonably concluded that these findings did not support greater limitations than he assessed (Tr. 15-21).

The ALJ asked the vocational expert about an individual of Plaintiff's age and education, and with the same limitations that the ALJ ultimately assessed in Plaintiff's RFC (Tr. 134-35; Tr. 15-16 (RFC assessment)). The expert testified that someone with these limitations could not do Plaintiff's past relevant work, but could do other work (Tr. 135). The ALJ cited this testimony approvingly when he found that Plaintiff could do other work existing in significant numbers in the national economy (Tr. 21-22).

Plaintiff argues that the ALJ could not rely on this testimony because the hypothetical that the ALJ presented differed from the findings of the State agency at the initial and reconsideration levels of administrative review (DE 15 at 5 (citing Tr. 175, 196, 219, 240)). However, as the ALJ correctly stated at the hearing, he was not bound by the state agency's determinations (*see* Tr. 104). 20 C.F.R. § 404.1503(d)(1)-(3) (SSA is not bound by a State agency determination); *Sims v. Comm'r of Soc. Sec.*, No. 10-10379, 2010 WL 3488607, at *1 (E.D. Mich. Sept. 1, 2010)(unpublished) ("Plaintiff's arguments regarding whether the ALJ is bound by the finding of a state agency is superfluous. . . [T]he conclusion that the ALJ is not bound by the disability finding of a state agency is correct.").

Next, Plaintiff argues that, because she was limited to standing or walking four hours per day, the ALJ should not have

relied on the vocational expert's testimony that she could do light work (DE 15, page 6-7; *see* Tr. 15-16). Her argument is off base. It is true that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (emphasis added). But the ALJ did not ask the expert about a hypothetical individual who could do the full range of light work. Rather, the ALJ asked the expert about a hypothetical individual with Plaintiff's limitations, including a limitation to standing and/or walking only four hours in a workday (Tr. 15, 134). The expert testified that someone with those limitations could do the three light jobs she identified (Tr. 134-35). Plaintiff's counsel did not object to this testimony (Tr. 131-37). *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) (unpublished) (absent an objection to the vocational expert's testimony, the ALJ reasonably relied on the testimony).

The whole point of vocational expert testimony is to go beyond the limited information contained in the Dictionary of Occupational Titles. *See* 20 C.F.R. § 404.1566(e). The ALJ thus reasonably relied on the vocational expert's testimony. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."

In short, the ALJ reasonably considered the mixed evidence before him, evaluated Plaintiff's reported symptoms, weighed the medical opinions, and considered the vocational expert's testimony when he concluded that Plaintiff was not disabled under the Act. The Court must thus affirm this finding if it is supported by substantial evidence. 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

Having reviewed the entire administrative record of almost 2,000 pages and considered the arguments of counsel, the Court concludes that the Commissioner's final decision is supported by substantial evidence. Accordingly,

**IT IS ORDERED herein as follows:**

(1) That the Commissioner's final decision be, and the same hereby is, **AFFIRMED.**

(2) That the Defendant's motion for summary judgment (DE 17) be, and the same hereby is, **GRANTED.**

(3) That the Plaintiff's motion for summary judgment (DE 15) be, and the same hereby is, **DENIED.**

(4) A separate judgment in conformity herewith shall this date be entered.

This the 4th day of August, 2021.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge